UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANNE G.[1], | Case No.: 3:19-cv-01333-MK |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff Anne G. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Title II Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Both parties consent to jurisdiction by a U.S. Magistrate Judge.  For the reasons set forth below, the Commissioner's decision should be reversed and remanded for immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

## BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on June 30, 2016, alleging disability beginning June 28, 2016. Tr. 199-200.  Her claim was initially denied on October 12, 2016, and upon reconsideration on January 13, 2017. Tr. 118-19, 134-38, 143-45.  Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Cynthia D. Rosa on July 16, 2018. Tr. 77-104, 147-48.  The ALJ denied Plaintiff's application in a written decision dated September 26, 2018. *See* Tr. 11-30.  Plaintiff sought review from the Appeals Council. *See* Tr. 196-98.  The Appeals Council denied review of the ALJ's decision. Tr. 1-7.  Plaintiff now seeks judicial review of the decision.[2]

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

///

---

[2] The Court notes that Plaintiff's Reply Brief (ECF No. 27) and Plaintiff's Amended Reply Brief (ECF No. 28) appear to be the same document.  On October 8, 2020, an Order was entered allowing Plaintiff until 5:00pm on October 13, 2020 to submit any amended Reply she wished the Court to consider in reviewing the Commissioner's decision.  As no Amended Reply was submitted, this Court reviewed Plaintiff's Brief (ECF No. 22), Defendant's Brief (ECF No. 23), Plaintiff's Reply Brief (ECF No. 27) and Plaintiff's Amended Reply Brief (ECF No. 28) when making its determination.

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 404.1520(a)(4)(ii). The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.* At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

///

///

**DISCUSSION**

In the present case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 28, 2016. Tr. 16.  At step two, the ALJ found that Plaintiff had the following severe impairments: facet syndrome at C5-6 and C6-7 causing secondary dystonia, idiopathic thoracic scoliosis, and thoracic spondylosis with a history of compression fracture at T12. Tr. 16-18.

At step three, the ALJ found that none of those severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18-19.

Prior to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined she could

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; she can do occasional overhead reaching bilaterally; she should avoid concentrated exposure to hazards.

Tr. 19-22.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a bank collections worker, interviewer/survey worker, and customer service person.  Tr. 22-23.  The ALJ also made alternative findings at step five of the sequential evaluation process and found that Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, such as routing clerk, storage facility rental clerk, and price marker. Tr. 23-24.  The ALJ then found that Plaintiff had not been under a disability, as defined by the Act, since June 28, 2016, the date the application was filed, through the date of her decision, September 26, 2018. Tr. 24-25.

Plaintiff seeks review by this Court contending that the ALJ erred in (1) improperly rejecting Plaintiff's subjective complaints; and (2) improperly rejecting the lay opinion of her former supervisor, Mr. Jose R. Pl.'s Opening Br. 5 (ECF No. 22).

Plaintiff requests this case be reversed and remanded for an award of benefits. Pl.'s Opening Br. 13 (ECF No. 22).  Alternatively, Plaintiff requests the case be remanded for further adjudication if additional issues remain. *Id.*  The Court addresses Plaintiff's arguments below.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).  A general assertion the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[3] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the

---

[3] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ did not find evidence of malingering. *See* Tr. 11-25.  Thus, the ALJ was required to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. Here, the ALJ found "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19.  In making this finding, the ALJ discredited Plaintiff's subjective symptom testimony for the following reasons: (1) Plaintiff stopped working for reasons other than her alleged impairments; (2) Plaintiff was able to work with her allegedly disabling impairments; (3) Plaintiff's impairments improved with treatment; (4) Plaintiff's activities of daily living were inconsistent with her alleged symptoms; and (5) Plaintiff's impairments were not supported by objective medical evidence. Tr. 19-21. The Court reviews the ALJ's reasons in turn.

### A.    Stopped Working for Reasons Unrelated to Impairments

The ALJ discredited Plaintiff's subjective symptom testimony after finding she stopped working for reasons other than her allegedly disabling impairments. Tr. 20.  Specifically, the ALJ noted that Plaintiff stopped working because of a business-related layoff and her inability to complete job training due to having the flu. *Id*., citing Tr. 287-97, 622.  Additionally, the ALJ

noted that Plaintiff also received money from her parents each month, which the ALJ found "suggests [Plaintiff] has little motivation to be gainfully employed." *Id.*

The Ninth Circuit has held that it is a clear and convincing reason to discredit a claimant if claimant's alleged disability is not the reason the claimant stopped working. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Plaintiff argues that although the ALJ correctly noted that she lost her job at Capital One because of business related layoffs, the ALJ failed to acknowledge the "plethora of evidence" showing that "her impairments significantly interfered with her ability to sustain full-time work," and "prevented her from maintaining other jobs she attempted." Pl.'s Opening Br. 7 (ECF No. 22). This Court agrees.

The ALJ correctly noted that Plaintiff was laid off from her job at Capital One and was unable to maintain a job with the IRS because she could not complete training because of the flu. *See* Tr. 20. However, as Plaintiff argues, and this Court agrees, the ALJ failed to address the substantial evidence that Plaintiff's impairments interfered with her ability to sustain full-time work. For example, as Plaintiff notes, treatment records and a letter from her former supervisor at Capital One show Plaintiff's pain started to interfere with her ability to work before being laid off for business reasons. *See* Tr. 960, an October 8, 2015 treatment note where the provider wrote that Plaintiff missed work because her pain was so severe after her Botox injection wore off; Tr. 964, a November 19, 2015 treatment record where Plaintiff "[h]as missed work due to dystonia"; Tr. 397, a letter from Mr. Jose R.'s, Plaintiff's former supervisor at Capital One, who wrote that Plaintiff's impairments negatively interfered with her work and caused her to call out from work often, prior to her eventual layoff due to financial reasons.

Additionally, after losing positions with Capital One and the IRS, Plaintiff's impairments became worse so that when she attempted to work at Arby's her impairments prevented her from

maintaining employment. *See* Tr. 85-86, 96, where Plaintiff testified she was only able to work
for three months at Arby's because she was given hours and lifting tasks that were over the limits
set by her pain management doctor, and that after she completed work she described her body
felt "extremely painful."  Based on this evidence, the ALJ erred in discrediting Plaintiff's
subjective symptom testimony because she lost her job for reasons unrelated to her disability as
there was substantial evidence in the record showing Plaintiff's impairments limited her ability
to perform full-time work.

   Next, with respect to Plaintiff's work history, the ALJ also discredited Plaintiff after
finding that her parents purchased a home for her and provided her $1,000 to $1,400 a month for
living expenses. Tr. 20.  The ALJ found these facts suggest Plaintiff "has little motivation to be
gainfully employed." *Id*.  The ALJ's finding is not supported by substantial evidence in the
record.  Although Plaintiff's family provided financial support to her, the record also reflects that
Plaintiff attempted to work even after being laid off from Capital One. *See* Tr. 65 and 68,
December 5, 2016 and December 16, 2016 medical treatment notes where Plaintiff is noted to be
working full time in customer service; Tr. 85. Plaintiff's hearing testimony where she described
her attempts to work at the IRS and Arby's after being laid off from Capital One.  The history of
Plaintiff's various work attempts does not support the ALJ's finding that Plaintiff has "little
motivation to be gainfully employed" and instead provides greater support for Plaintiff's
argument that it was her impairments, and not a lack of motivation to work, that prevented her
from remaining employed.  For this reason, Plaintiff's receipt of financial support from her
family is not a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

///

///

B.      **Plaintiff Worked with Allegedly Disabling Impairments**

Next, the ALJ discredited Plaintiff's subjective symptom testimony after noting that

evidence showed Plaintiff complained of neck and upper back pain "since at least 2014," and

that she had been able to work full-time despite these symptoms. Tr. 20, citing 409, 421, 514.

Additionally, the ALJ noted that the evidence "does not show that [Plaintiff's] condition

worsened significantly since the alleged onset of disability" which the ALJ noted, "suggests a

conclusion that any symptoms would not completely interfere with fulltime work." Tr. 20.

Plaintiff argues that unlike the ALJ's finding, her impairment-related symptoms have

become notably worse, as evidenced by the medical record, a statement from her former

supervisor, and based on her testimony. Pl.'s Opening Br. 8 (ECF No. 22), citing Tr. 397, 679-

80, 682, 738, 740, 751-54, 780, 796, 818-19, 874-78, 960, 964-66, 1145, 1147, 1158, 1173,

1175, 1180, 1202, 1251, 1253-54.  Indeed, an independent review of the record supports

Plaintiff's argument with medical opinion evidence showing Plaintiff's medical impairments

continued to become more debilitating over the years and treatment becoming less effective. *See*

Tr. 679, a May 12, 2015 treatment note where Plaintiff was given a larger dose of Botox to

address her dystonia and treatment providers also noted that Plaintiff reported missing one day of

work a week due to pain associated with her dystonia; Tr. 682, a November 24, 2015 treatment

note where Plaintiff reports her dystonia is now affecting the anterior muscles in her neck

causing intermittent tremors and pulling to the right; Tr. 738, an October 6, 2016 treatment note

where the status of her pain was noted as being "somewhat more severe"; Tr. 751, a November

16, 2016 treatment note where Plaintiff's pain is noted as being "constant, intense and worse

with twisting and inspirations" and that her current pain treatment "is not effective"; Tr. 780, a

December 16, 2016 treatment note where Plaintiff reported "increased retrocollis" in her neck

and "requested a higher dose" of Botox; Tr. 796, a March 17, 2017 treatment note where

Plaintiff noted "increased left laterocollis" and again requested a higher dose of Botox to address

her increased neck pain; Tr. 1202, a November 2, 2017 treatment note where Plaintiff is noted to

be experiencing "more neck and upper back pain" and reports that she "feels botox was not as

helpful as before"; Tr. 1261, a July 23, 2018 treatment note where it is noted that Plaintiff has

"significantly exacerbated pain on top of her chronic baseline pain."

   Based on these medical records, this Court finds the ALJ's conclusion that Plaintiff's

condition had not worsened significantly since the alleged onset of disability is not supported by

substantial evidence as Plaintiff's impairments became more severe after her alleged disability

onset date.  Therefore, the ALJ's finding that Plaintiff's impairments did not become worse and

that she was previously able to work with her impairments is not supported by substantial

evidence in the record and are not clear and convincing reasons to discredit her subjective

symptom testimony.

   **C.**  **Effective Treatment**

   Next, the ALJ discredited Plaintiff's subjective symptom testimony finding that she

"benefited from treatment for her neck dystonia and chronic pain" and that her pain symptoms

were "managed with opioid medications." Tr. 20-21.  An ALJ may discount a claimant's

testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir.

2016).  Plaintiff argues that although treatment improved her symptoms for limited amounts of

time, treatment "has not resolved her symptoms, and has not consistently restored a level of

functioning that would allow her to sustain full-time, competitive employment." Pl.'s Opening

Br. 9 (ECF No. 22).  This Court agrees.

Although the ALJ correctly noted that Plaintiff treated her impairments with medications, steroid injections, and Botox injections, the ALJ failed to note that these treatments only provided temporary relief.  Indeed, as Plaintiff argues, and an independent review of the record shows, Plaintiff only had temporary relief from dystonia pain through treatment. *See* Tr. 90, where Plaintiff testified that Botox injections managed her pain for only nine weeks at a time, Tr. 679, a May 12, 2015 treatment note where medical providers noted that Botox injections helped, but wore off, Tr. 682, a November 24, 2015 treatment note where again, medical providers noted that Plaintiff's pain responded well to Botox injections, but the Botox wore off, Tr. 1158, a May 8, 2017 treatment note where providers wrote that Plaintiff's "[c]urrent opioid regimen is no longer effective" to control pain, Tr. 1261, a July 23, 2018 treatment note where Plaintiff is noted that she has "significantly exacerbated pain on top of her chronic baseline pain." Additionally, as noted above, Plaintiff's impairments became progressively worse, which further undermines the ALJ's finding that Plaintiff's impairments were effectively controlled with treatment.  Given these facts, substantial evidence does not support the ALJ's finding that Plaintiff's severe impairments were effectively controlled by treatment.

### D.    Activities of Daily Living

Next, the ALJ discredited Plaintiff's subjective symptom testimony finding that her activities of daily living were inconsistent with her alleged symptoms. Tr. 20-21.  An ALJ may use a claimant's activities of daily living to determine symptom allegation credibility in order to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn*, 495 F.3d 625, 639 (9th Cir. 2007).  Here, the ALJ noted that Plaintiff traveled to London for vacation and to search for work, took trips to the coast to plan her wedding, was babysitting three children for a family member and able to play ball

with them despite experiencing additional pain, offered to act as a caregiver for her father,

worked as a paralegal for her father, and was tolerating pool exercises. Tr. 21.  Additionally, the

ALJ noted that Plaintiff reported to an examining psychologist in late 2016 that she was able to

perform light housework, prepare meals, and shop. *Id*.  Finally, the ALJ wrote that is was

"notable" that Plaintiff "rarely complained to healthcare providers that her chronic pain

symptoms were causing significant interference in her activities of daily living." *Id*.

    As an initial matter, the ALJ fails to explain how these activities contradict Plaintiff's

previous testimony.  Plaintiff never claimed that she was completely unable to perform activities

of daily living but that her pain increased based on the amount of activity she does the day

before, and this increased pain prevented her from working full-time. *See* Tr. 94, where Plaintiff

testified that she has "better days, and worse days" and will have increased pain the more active

she is the day or two before.  Although the ALJ correctly notes that Plaintiff planned her

wedding, babysat her three nephews, and tolerated pool exercise, these activities do not

contradict her testimony.  For example, after Plaintiff babysat her nephews she reported "paying

[the] consequences" for that activity, noting to medical providers that she experienced "fatigue,

increased pain, [and] immobility" after that activity. Tr. 1064.  Additionally, although Plaintiff

planned and had her wedding, she reported to a medical provider on October 11, 2016 that she

received extra oxycodone tables in order to participate in her wedding, noting that she "lasted 4

[hours] (at wedding) before [she] had to leave to lay down" and that she was on "bedrest" during

her honeymoon and "intermittently since then." Tr. 1025.

    Next, as Plaintiff notes, she never served as a caregiver for her father, and did not offer to

do so, but instead was "assigned" the task by her mother. *See* Tr. 1060, an August 14, 2017

treatment note where Plaintiff reported that she was "assigned" to tend to her father for six weeks

of rehabilitation and bed rest after his hip replacement surgery.  Additionally, Plaintiff's other activities of daily living were quite limited, with Plaintiff telling medical providers that she "does not engage in basic [activities of daily living] on a frequent basis" but does try to do some "light household chores" like laundry, doing dishes, watering plants, caring for her cat, preparing meals, and grocery shopping. Tr. 707-08.  None of these activities contradict Plaintiff's testimony that her pain increased with increased activity and made it impossible to maintain full time work.

Finally, Plaintiff's trip to visit her friend abroad occurred prior to her alleged onset date of June 28, 2016, and therefore does not contradict her testimony regarding the increased severity of her dystonia pain after that date. *Cf* Tr. 605, a Jan 14, 2016 medical treatment note where Plaintiff is noted that she will be vacationing in London from January 18, 2016 until February 2, 2016; *see also* Tr. 14, where Plaintiff reports her alleged onset date is June 28, 2016.

"One does not need to be utterly incapacitated or sit in bed all day in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).  Plaintiff's limited attempts to perform daily activities and chores are not inconsistent with her subjective symptom testimony.  Therefore, the ALJ failed to show Plaintiff's activities contradict her subjective symptom testimony.

Second, the ALJ provided no explanation for which of Plaintiff's activities represent skills that are transferable to a work setting.  As previously noted, Plaintiff spends a minimal amount of time performing activities of daily living, and when she does perform tasks, experiences debilitating pain the following day.  It is unclear how her ability to perform limited activities of daily living, followed by a day of bedrest, translates to the ability to perform activities for an eight-hour workday, five days a week.

Further, the Ninth Circuit has explained that:

> The critical differences between activities of daily living and activities in a fulltime job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).  Therefore, Plaintiff's participation in minimal activities of daily living and travel prior to her alleged onset date are not clear and convincing reasons to reject her subjective symptom testimony.

### E.    Objective Medical Evidence

Finally, the ALJ discredited Plaintiff's subjective symptom testimony finding that the objective medical evidence provided "little support" for Plaintiff's allegations of "disabling neck and upper back pain." Tr. 20.  The ALJ noted that an MRI of Plaintiff's cervical spine showed mild foraminal narrowing with no signs of spinal canal narrowing or cord impingement. *Id*. Additionally, the ALJ noted that Plaintiff was rarely observed as unable to maintain her head position, to be in distress, or to exhibit pain behavior. *Id*.  Finally, the ALJ noted that Plaintiff was not observed to have difficulty with walking, sitting, or changing positions because of her back pain. *Id*.

Conflict between the alleged severity of a claimant's symptom testimony and the medical evidence of record is a valid basis for an ALJ to find the claimant's symptom testimony less than fully credible. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  Here, Plaintiff argues that the objective medical evidence "does not reasonably contradict [Plaintiff]'s subjective statements regarding her pain and the effects of her treatment." Pl.'s Opening Br. 13 (ECF No. 22).

Additionally, Plaintiff argues that because the ALJ failed to provide other clear and convincing reasons to reject her subjective symptom testimony that this reason alone cannot be used to discredit her subjective symptom testimony.  This Court agrees.

As discussed above, the ALJ erred in discounting Plaintiff's testimony based on stopping work for reasons unrelated to her impairment, allegedly working with her disability, effective treatment of symptoms, and her activities. Thus, even if Plaintiff's testimony is not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about debilitating mental and physical impairments) (citation omitted).  Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

Additionally, this Court also finds that the objective medical evidence does not reasonably contradict Plaintiff's subjective symptom testimony as the ALJ suggests.  As noted above, treatment records show that Plaintiff's impairments were becoming more severe and treatments was no longer effective to address Plaintiff's impairments and pain.

Overall, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

///

## II.    Lay Witness Testimony

The Code of Federal Regulations specifically provides that opinions from nonmedical

sources can be provided for consideration. 20 C.F.R. §§ 404.1527(f), 404.1502(e).  "Competent

lay witness testimony cannot be disregarded without comment, and … in order to discount

competent lay witness testimony, the ALJ must give reasons that are germane to each witness."

*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation marks and citations

omitted).  If the ALJ provided clear and convincing reasons for rejecting the claimant's own

subjective complaints and if the lay witness's testimony was similar to such complaints, it

follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.

*Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009); 20 C.F.R.

§§ 404.1529(c)(3), 404.1545(a)(3).

The ALJ gave "little weight" to the third-party statements from Mr. Christopher T.,

Plaintiff's former spouse, Ms. Gail G., Plaintiff's mother, Mr. Jose R., Plaintiff's former

supervisor at Capital One, and Ms. Lindsay D., Plaintiff's former coworker at Capital One.[4] Tr.

22.  Here, Plaintiff only challenges the ALJ's rejection of Mr. Jose R.'s lay opinion. *See* Pl.'s

Opening Br. 14-15 (ECF No. 22).

In an undated letter, Mr. Jose R. described the symptoms he saw when Plaintiff worked

under his supervision from February 2015 until December 11, 2015. Tr. 397.  In his letter, he

noted that over the course of this time he noticed "a lot of changes" with Plaintiff, particularly

that she often wore a neck brace and changed her schedule to allow her to attend regular doctor

appointments for her neck and back. *Id*.  Mr. R. noted that Plaintiff's pain and discomfort were

causing Plaintiff to make many mistakes with her work, which other employees repeatedly had

---

[4] For the same reason stated in footnote 1, this Opinion and Order uses only the first name and the initial of the last
name of the lay witnesses.

to correct. *Id.* Mr. R. also noted that Plaintiff informed him that she was taking "very strong pain medication" which made it "hard for her to concentrate on her work load." *Id.* Additionally, the pain made it difficult to "sit at her desk comfortably." *Id.* He further wrote that she often "called in to work," left early, and had exceeded her allotted Oregon Family Leave Act (OFLA) time. *Id.*

The ALJ gave "little weight" to Mr. R's third-party statement. Tr. 22. When making this finding the ALJ found that the "description of [Plaintiff]'s symptoms and limitations in the third party statements [were] generally inconsistent with the objective evidence, the relatively positive response to treatment, and the claimant's activities of daily living, as discussed throughout this decision." *Id.* Additionally, the ALJ noted that the third-party statements were "not from neutral medical sources" which the ALJ found "implies that their observations of physical symptoms and related limitations may not be entirely reliable." *Id.*

As an initial matter, the Court addresses the ALJ's rejection of Mr. R.'s lay witness statement because it was "not from a medical source" which the ALJ found implies the observations "may not be entirely reliable." *Id.* The Ninth Circuit has previously acknowledged that "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence.... [h]owever, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence...and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original). Although Mr. R is not a medical source, the ALJ could not discredit his statements for this reason alone, and therefore was required to consider Mr. R's statements regarding Plaintiff's impairments and their effects, or provide germane reasons to discredit them.

Next, the Court turns to the three reasons the ALJ found to discredit Mr. R's lay opinion, particularly that his statements regarding Plaintiff's symptoms were "generally inconsistent with

the objective evidence, the relatively positive response to treatment, and the claimant's activities of daily living, as discussed throughout this decision." Tr. 22.  As discussed above, the ALJ's reliance on these three reasons to discredit Plaintiff's subjective symptom testimony was misplaced.  Accordingly, the ALJ likewise erred in discounting Mr. R's opinion regarding Plaintiff's abilities based on these same reasons. As the ALJ failed to provide germane reasons specific to Mr. R. to discredit his testimony, this Court finds the ALJ erred by failing to properly evaluate the lay witness testimony of Mr. R.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).  The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*  The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the

Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)).  The reviewing court should decline to credit testimony when "outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

As an initial matter, the Commissioner argues that "this is not the rare case where evidence should be credited as true" arguing that "Plaintiff has failed to challenge the ALJ's analysis of the medical evidence, and waives any argument." Def.'s Br. 13 (ECF No. 23), citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Additionally, the Commissioner argues that regulations provide that "statements about your pain or other symptoms will not alone establish that you are disabled." Def.'s Br. 13 (ECF No. 23), citing 20 C.F.R. § 404.1529(a); SSR 16-3p.  Plaintiff challenges this argument by arguing that she did challenge the medical opinion evidence in her Opening Brief when she argued that "the objective evidence does not undermine [Plaintiff's] subjective statements." Pl.'s Reply Br. 3 (ECF No. 27), citing Pl.'s Opening Br. 12 (ECF No. 22).  This Court finds Plaintiff's argument persuasive.

As noted above, Plaintiff did challenge the ALJ's characterization of the medical opinion evidence, noting that the ALJ improperly characterized the medical opinion evidence in order to reject Plaintiff's subjective symptom testimony. *See* Pl.'s Opening Br. 12 (ECF 22).  The ALJ must evaluate the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks omitted).  Here, the ALJ improperly evaluated Plaintiff's subjective symptom testimony by disregarding parts of the medical treatment record, thus this Court finds that it is appropriate that the improperly rejected evidence is credited as true and provides that analysis below.

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for: (1) discrediting Plaintiff's subjective symptom testimony; and (2) discrediting Mr. R's lay witness statements regarding the effect of Plaintiff's impairments on her work.

As to the second prong, there are no outstanding issues that must be resolved, and the record has been fully developed.  The record reflects that Plaintiff suffers from neck and back pain related to dystonia that causes debilitating pain and significantly limits her daily activities and ability to perform full-time work.

Finally, the third prong is met because it is clear from the record that if the ALJ fully credited Plaintiff's subjective symptom testimony and Mr. R's lay witness testimony regarding Plaintiff's impairments, the Commissioner would be required to find Plaintiff disabled. Particularly, if the improperly discredited evidence were credited as true it shows that Plaintiff had to call out from work for four or five days after her Botox injections, that she was bedridden after performing strenuous activities, and would therefore miss more work than tolerated by employers. *Cf.* Tr. 102, indicating that the VE testified that if a claimant missed all or part of a workday, two or more days per month, they would not be able to sustain substantial gainful activity; *see also* Tr. 90-91, where Plaintiff testified that she received Botox injections every three months and would need to call out of work for four or five days after these Botox injections because of side effects.  Additionally, Mr. R's letter noting that Plaintiff "often called in to work and left early" and had "exceeded her allotted OFLA time" support Plaintiff's claims that she would miss more work than tolerated by employers. *See* Tr. 397.

For the reasons set forth, the Commissioner's decision is reversed, and this matter is remanded for the immediate calculation and payment of benefits.

DATED this <u>28th</u> day of October 2020.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge